RONALD EDEN, APPELLEE, V. DENNIS SPAULDING, ERNEST FUNDUM, AND OMAHA WORLD-HERALD COMPANY, A CORPORATION, APPELLANTS.

359 N.W.2d 758

Filed December 21, 1984.   No. 83-426.

Knudsen, Berkheimer, Richardson & Endacott, for appellants Spaulding and Fundum.

Milton A. Katskee of Katskee & Henatsch, and Joseph P. Cashen of Kennedy, Holland, DeLacy & Svoboda, for appellant Omaha World-Herald.

Martin A. Cannon of Matthews & Cannon, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

This action was brought by the plaintiff-appellee, Ronald Eden, to recover damages for severe injuries he received when his car collided with a truck driven by defendant-appellant Dennis Spaulding and owned by defendant-appellant Ernest Fundum. This truck is referred to herein as "Spaulding's truck," although owned by Fundum. At the time of the collision Spaulding's truck was proceeding from Norfolk, Nebraska, toward the building of defendant-appellant Omaha World-Herald Company, a corporation (hereinafter World-Herald), to pick up and transport World-Herald newspapers back to Norfolk. The accident occurred at about 7:30 p.m. on March 29, 1981, at the intersection of 30th and Lake Streets in Omaha, Nebraska. At the time of the collision Spaulding was driving south on 30th Street and turning left onto Lake Street. Eden's car was going north on 30th Street. The accident happened in the intersection.

At the conclusion of all the evidence offered at the trial, the court determined that Spaulding was negligent as a matter of law; that Spaulding's negligence was imputable to his employer, Fundum; and that Eden, as a matter of law, was not contributorily negligent. The court therefore directed a verdict against defendants Spaulding and Fundum on the liability question.

The court submitted to the jury the question of whether Fundum was an agent of the World-Herald and was operating within the scope of his agency at the time of the accident. The question of damages was submitted to the jury. The jury

returned a verdict in favor of Eden and against all the defendants in the amount of $3,000,000.

Defendants Spaulding and Fundum appeal, assigning as error, among other assignments, that the trial court erred in sustaining Eden's motion for a directed verdict, in that the evidence did not support a conclusion that Spaulding was negligent as a matter of law and that the evidence was sufficient to present a jury question as to whether Eden was contributorily negligent.

Defendant World-Herald appeals, assigning as error, among other assignments, that the trial court erred in submitting the issue of whether Fundum was an agent of the World-Herald at the time of the accident.

For the reasons hereinafter set out we reverse as to defendants Fundum and Spaulding, and remand the case for a new trial as to those defendants. We reverse and remand the case with directions to dismiss the case as to defendant World-Herald. In view of this disposition of the case on appeal, it is unnecessary to consider other assignments of error presented by appellants.

We first address the contention of defendants Fundum and Spaulding that the trial court erred in directing a verdict in favor of Eden on the questions of Spaulding's negligence and Eden's contributory negligence. We have held that "in examining the propriety of an order sustaining a motion for a directed verdict, all controverted facts and all inferences arising from the evidence shall be construed most strictly against the moving party and in favor of the party against whom the verdict was granted." *Otto v. Hongsermeier Farms*, 217 Neb. 45, 49, 348 N.W.2d 422, 425 (1984).

Under the version of the facts most favorable to defendants, there was evidence before the jury that would support findings of the following facts. Spaulding was going south on 30th Street, driving a 19-foot-long truck. Preparatory to turning left onto Lake Street, Spaulding pulled into the "storage lane" just to the east of the two southbound traffic lanes. Spaulding had his driving lights on, and as he turned into the left turn lane, he turned on the left turn signal on his truck. He followed a truck in front of him in the left turn lane and stopped his truck where

the first truck had been stopped. The truck in front of Spaulding made its left-hand turn, and Spaulding observed the traffic lights changing from green to yellow for the north and south traffic. At the time of this observation Spaulding's truck projected into the intersection. In its regular operation the traffic light remained yellow for four seconds and then turned red. Spaulding saw northbound cars in the east lane stopping or slowing down. Spaulding also saw Eden's Volkswagen car going north in the westerly driving lane on 30th Street at a point between "half a block and a block away." Spaulding turned left on the red light, and his truck was struck on the right side near the rear dual wheels by the Eden vehicle.

We have held that "it is established law that a driver who fails to see another who is favored over him is guilty of negligence as a matter of law." *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 408, 308 N.W.2d 503, 510 (1981). That rule of law, however, does not apply to this case. Here, Spaulding did see the Eden car. That was not the situation presented in *Lane*.

We have also held that "[g]enerally, the failure to see an approaching vehicle is not negligence as a matter of law unless the vehicle is undisputably located in a favored position." *Treffer v. Seevers*, 195 Neb. 114, 118, 237 N.W.2d 114, 117, (1975). Where there is evidence that shows that one vehicle is not definitely in a favored position, "the applicable rule is that where a motorist looks and does not see an approaching vehicle, or seeing one, erroneously misjudges its speed and distance, or for some other reason assumes that he can proceed and avoid a collision, the question is usually one for the jury." *Kremlacek v. Sedlacek*, 190 Neb. 460, 465, 209 N.W.2d 149, 154 (1973).

In the instant case, the evidence, viewed in the light most favorable to defendants, indicates that Eden was not indisputably in a favored position. There was direct testimony that the light turned red prior to Spaulding's left turn. Spaulding's testimony that the light was red as he completed his turn would necessarily mean that Spaulding's truck and Eden's Volkswagen collided in the intersection while the traffic light was red for each of them. The testimony that Eden's vehicle was

half a block to a block away when the light turned yellow could also lead to an inference that the light turned red prior to the Eden vehicle's entering the intersection. Since it is disputed whether Eden was in a favored position, the latter rule applies, and the question is for the jury. *Treffer v. Seevers, supra; Kremlacek v. Sedlacek, supra.*

Fundum and Spaulding also assigned as error the trial court's refusal to submit the issue of Eden's contributory negligence to the jury. They assert, inter alia, that Eden was negligent in failing to stop for a yellow light when such a stop could have been safely made. The trial court directed a verdict in favor of Eden on the issue of contributory negligence. We reverse that ruling and hold that question is also for the jury.

The applicable rule is: "[U]pon display of a yellow light following the green on an automatic traffic signal, vehicular traffic should stop before the crosswalk on the near side of the intersection unless such stop cannot be made safely, in which event the vehicle may be driven carefully through the intersection as a prudent person would do." *Zavoral v. Pacific Intermountain Express,* 178 Neb. 161, 168, 132 N.W.2d 329, 333 (1965). In the instant case, as stated above, there was testimony that Eden's vehicle was half a block to a block away at the time the light turned yellow. There is also testimony that Eden continued to travel at about the same rate of speed and that he did not apply his brakes until he was about two car lengths away. There were no skid marks on the street. Granting the inferences to the appellants, it becomes clear that a question of fact existed as to whether Eden could have stopped safely from a speed of 30 miles per hour within a distance of half a block to a block. If not, it was for the jury to decide whether he then drove the car through the intersection in the manner a prudent person would.

We next turn to the errors assigned by the defendant World-Herald. As stated above, the World-Herald first asserts that the trial court erred in submitting to the jury the question of whether an agency relationship existed between Fundum and the World-Herald. The World-Herald suggests that a verdict should have been directed in its favor. We agree and hold that, as a matter of law, no agency existed between the two and that

Fundum, in his relationship with the World-Herald, was an independent contractor.

As we stated in *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 71, 333 N.W.2d 646, 648 (1983), "the common-law test for independent contractor includes many factors which are to be considered and weighed in making the determination, no one of which may be conclusive." We then set forth 10 factors from the Restatement (Second) of Agency § 220 (1958) which must be considered in determining the nature of the relationship. An application of these factors to the instant case shows as a matter of law that Fundum was an independent contractor rather than an agent.

As set out in *Maricle v. Spiegel*, 213 Neb. 223, 233, 329 N.W.2d 80, 87 (1983): "Generally, control, or the right of control, is the chief criterion in determining whether someone acts as an independent contractor." Nonetheless, as stated in *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 20, 286 N.W.2d 420, 425 (1979): "However, even the employer of an independent contractor may, without changing the status, exercise such control as is necessary to assure performance of the contract in accordance with its terms." The control exercisable by the World-Herald was minimal. It could only suggest a pickup time to Fundum. Fundum's arrival at a later time would be "inconvenient" to both parties, but the decision as to when to pick up the papers was nonetheless within his discretion. The World-Herald could not object to drivers hired by Fundum to drive his trucks. The World-Herald did not dictate the route a truck was to follow from Norfolk to Omaha and return. Fundum paid for all the gas and oil used by his trucks in the trips. There were no other intimations in the record which would suggest a right of control on the part of the World-Herald. It is clear that the World-Herald possessed no such right.

Eden cites at length from several cases which correlate "the unbridled right of discharge" with control. The existence of such a right is not as concretely established as Eden would have us believe. But, even conceding the point, these cases are not controlling. They involve situations in which the workman served only one person. In such a case, the right to terminate

does involve some control. However, in this case, at the time when Fundum and the World-Herald entered into their contract agreement, Fundum had other contracts to perform—namely, carrying post office "star routes." Fundum did not rely solely on the World-Herald for income.

The second factor suggested in *Erspamer* is whether or not the one employed is engaged in a distinct occupation or business. Clearly, Fundum was engaged in a distinct occupation. The hauling for the World-Herald was not his only business, as stated above; he also had two "star routes." He had three vans and a truck to use in his business. Thus, it cannot be said that his trucking business, though small, was nonexistent.

The third factor includes the kind of occupation involved—whether, in the locality, the job is usually supervised by the employer. Clearly, this is not the case. Other "star route" drivers were hauling for the World-Herald under similar contracts. There was very little World-Herald supervision. There were no fixed routes, no regulations concerning carrying passengers, and no restrictions on the carriage of other baggage.

The fourth suggested consideration—the skill required in the particular occupation—is not very enlightening in this fact pattern. Regardless of whether driving a truck of this type is an unskilled or highly skilled trade, there are great numbers of people who engage in it as independent contractors and as employees.

"That the worker supplies his own materials and tools may be indicative of contractor status." *Voycheske v. Osborn*, 196 Neb. 510, 513, 244 N.W.2d 74, 76 (1976). It is undisputed that Fundum supplied his own truck. He was also responsible for furnishing the necessary oil, grease, gasoline, and repairs to the truck. When one truck wore out, Fundum replaced it on his own, without consulting the World-Herald. On the night of the accident it was Fundum who paid for a substitute truck to haul the newspapers.

The length of time which a person is employed is another element of the test. Again, this factor is not particularly illuminating. While we agree that where the right to terminate without penalty exists, the employee is usually a servant, *Schneider v. Village of Shickley*, 156 Neb. 683, 57 N.W.2d 527,

(1953), we note that any motor carrier's hauling contract could be terminated in such a manner, if the contract permitted such termination.

The seventh criterion deals with the method of payment. "Normally an employee is compensated while he works. An independent contractor's compensation, on the other hand, usually depends upon whether he makes a profit from the contract." *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 22, 286 N.W.2d 420, 426 (1979). Fundum was clearly operating to realize a profit. He was paid a monthly sum. If, after paying his employees' salaries and other operating expenses, there was a surplus, Fundum would make money. If there was a deficit, he would lose money.

Whether or not the work is part of the regular business of the employer also must be examined. While the World-Herald had its own distribution system within the city, it had no trucks which delivered the papers outside of the city. Carriage of newspapers to distribution centers outside the city was contracted out by the World-Herald.

As set out in the Restatement (Second) of Agency § 220, comment *i.* (1958), whether the parties believed they were creating a master-servant relationship is an important guideline. The contrary is clearly true in this case. The World-Herald withheld no income taxes, Social Security, or any other deduction. It carried no workmen's compensation coverage on Fundum. It made no attempt to regulate him. Fundum, on the other hand, made all the necessary deductions from his drivers' paychecks, provided workmen's compensation coverage to his drivers, and issued directions to his drivers. The parties were unquestionably acting in the belief that their relationship was that of independent contractor.

The final factor from *Erspamer* is whether or not the principal is in business. This question is not germane to the issue at hand. If the principal is not in business, an independent contractor's status will be found. This factor is inapplicable here.

In addition to the considerations suggested in *Erspamer*, we have repeatedly said that the failure to withhold taxes indicates that an independent contract exists. *Riggins v. Lincoln Tent &*

*Awning Co.*, 143 Neb. 893, 11 N.W.2d 810 (1943); *Voycheske v. Osborn, supra; Sortino v. Miller*, 214 Neb. 592, 335 N.W.2d 284 (1983). "The deduction of social security taxes and the withholding of income tax tends to indicate an employer-employee relationship, while the failure to do so is a contrary indication." *Stephens v. Celeryvale Transport, Inc., supra* at 20, 286 N.W.2d at 425. The World-Herald made no such deduction from Fundum's payment.

In *Zajic v. Johnson*, 126 Neb. 191, 253 N.W. 77 (1934), we were presented with a nearly identical situation. In that case plaintiff's decedent died from injuries suffered as a result of a collision between the automobile in which he was a passenger and a truck, owned by one defendant, operated by another defendant, and transporting newspapers owned by the defendant publishing companies. We held that the lower court was correct in finding an independent contractor relationship as a matter of law and dismissing the defendant publishing companies.

Eden's attempts to distinguish *Zajic* from the instant case are not persuasive. The dissimilarities suggested are inconsequential. We find the reasoning of *Zajic* to be sound and the precedent to be controlling with respect to the independent contractor status in this case.

For the reasons hereinbefore set out we find that the trial court erred in submitting the agency question to the jury and failing to find as a matter of law that Fundum was an independent contractor.

The case is reversed and remanded for a new trial as to defendants-appellants Fundum and Spaulding. The case as to defendant-appellant Omaha World-Herald is reversed and remanded with directions to dismiss as to such defendant.

REVERSED AND REMANDED FOR A NEW TRIAL AS TO DENNIS SPAULDING AND ERNEST FUNDUM. REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS AS TO THE OMAHA WORLD-HERALD COMPANY.