KENNETH W. KNOWLTON, APPELLANT, V. AIRPORT TRANSPORTATION CO., A NEBRASKA CORPORATION, APPELLEE.

454 N.W.2d 278

Filed April 20, 1990. No. 88-884.

Michael F. Gutowski for appellant.

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from an order of the Workers' Compensation Court. The compensation court denied benefits to the plaintiff. We affirm.

Plaintiff, Kenneth W. Knowlton, was involved in an auto accident on November 1, 1985, while driving a passenger van owned by defendant, Airport Transportation Co., but leased to Knowlton. Knowlton filed a petition in the Workers' Compensation Court, alleging that the accident occurred while he was employed by defendant. A single judge awarded compensation to Knowlton. Pursuant to defendant's application for rehearing, a three-judge panel dismissed Knowlton's petition, finding that he was an independent contractor. Knowlton appeals to this court, assigning as error the panel's finding that he was an independent contractor rather than defendant's employee.

Knowlton began driving a van for defendant in January 1982. At that time he was paid an hourly wage, and Social Security and income taxes were withheld from his pay. In May 1983, Knowlton entered into a lease agreement with defendant.

In August 1985, Knowlton entered into another lease agreement which was substantially similar to the first lease agreement. This lease agreement was in effect when Knowlton was involved in the accident. The agreement provided that defendant would lease a van to Knowlton for $225 per week. The agreement also provided:

> 8. The Second Party [Knowlton] (and all other drivers operating said limousine) shall perform this Agreement as an independent contractor and nothing herein contained shall be construed to be inconsistent with this relationship or status and nothing in this Agreement shall in any way be construed to constitute the Second Party (and all other drivers operating said limousine) as the agent, employee, or representative of the First Party [defendant]. As an independent contractor, the Second Party (and all other drivers operating said limousine) shall pay his own FICA, withholding, and such other taxes as may be required in prescribed form and shall file Schedule C-1, Self-Employment Tax Form, with his federal income tax return.

The conversion to a lease basis was prompted by a desire to provide the drivers with an incentive to earn more money by getting more contracts and making more runs. Under the plan, defendant made an agreement with several Omaha hotels to transport their guests from the airport to the hotel and from the hotel to the airport. Defendant billed the hotels monthly on a per room basis. When payments from the hotels were received, defendant deducted lease payments and dispersed the balance to the drivers based on the number of runs made.

Defendant retained ownership of the van, as required by Public Service Commission (PSC) regulations. The van was registered and licensed with the PSC and could not be used to compete with taxicabs, but could be used to transport cargo. Drivers were allowed to contract for the transportation of cargo. The driver could use the van for personal uses, including vacations, and was responsible for fuel and maintenance. Knowlton testified that he also drove the van home after work. The driver could, but was not required to, purchase fuel and maintenance services from the defendant. The lease agreement

contained various provisions reflecting PSC regulations. The rates charged by defendant were approved by the PSC. The drivers had no control over the rates.

Defendant would plan a route or a schedule as a convenience to the drivers and the hotel operators. With a single unified system the drivers operated more efficiently. The vans were equipped with radios, and the drivers were sometimes offered other runs, such as delivering flowers or packages. The drivers were free to accept or reject these offers as they chose, but all the money received by defendant for these runs was ultimately paid to the drivers. The drivers were also "on call," but again could accept or reject afterhours calls as desired. A defendant's witness testified that Airport Transportation retained some control over the drivers with regard to dispatching and accounting. If defendant was not satisfied with the driver's service, the remedy was a 30-day notice that the lease agreement was terminated.

Under the lease agreement defendant did not withhold Social Security or income taxes from the payments to Knowlton. Knowlton paid his own Social Security taxes and listed himself as a self-employed limousine driver on his tax returns.

This court has stated that the findings of fact made by the compensation court after rehearing shall have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Brazee v. City of Lincoln,* 234 Neb. 680, 452 N.W.2d 529 (1990). " '[C]ontrol or the right of control is the chief criterion in the determination of whether one acts as an independent contractor.' " *Spulak v. Estep,* 216 Neb. 523, 527, 344 N.W.2d 475, 477 (1984). We have also stated that

> [w]here a written contract between the claimant and alleged employer exists, which not only denominates the relationship as that of independent contractor but also describes that kind of relationship, and nothing in the manner of performance by the parties is inconsistent with the relationship described, then the independent contractor is, as a matter of law, bound by the contract and is not to be deemed an employee within the meaning of the workmen's compensation statutes.

(Syllabus of the court.) *Stephens v. Celeryvale Transport, Inc.,*

205 Neb. 12, 286 N.W.2d 420 (1979); *Spulak v. Estep, supra.*

We have reviewed the record and cannot say that the panel's conclusion that Knowlton was an independent contractor is clearly wrong. Accordingly, the judgment is affirmed.

AFFIRMED.