IRVIN A. ANTHONY, APPELLANT AND CROSS-APPELLEE, V. PRE-FAB
TRANSIT COMPANY AND PROTECTIVE INSURANCE COMPANY,
APPELLEES AND CROSS-APPELLANTS.

476 N.W.2d 559

Filed November 1, 1991.   No. 90-892.

Richard A. Douglas, of Nichols, Douglas, Kelly and Arfmann, P.C., for appellant.

Ronald Frank and Clark J. Vanskiver, of Sodoro, Daly & Sodoro, for appellees.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from an order of a three-judge panel of the Workers' Compensation Court dismissing the claim of plaintiff-appellant, Irvin A. Anthony, against defendants-appellees, Pre-Fab Transit Company and Protective Insurance Company. The claim was dismissed after the panel found that plaintiff was an independent contractor and not an employee of Pre-Fab. Plaintiff has appealed, assigning as error the actions of the compensation court in

failing to find that "Plaintiff was entitled to benefits from Defendants" and in failing to find that "the Defendants were estopped to deny benefits to the Plaintiff." We affirm.

The record shows the following:

Pre-Fab is a national trucking concern. It receives orders from customers to transport goods and then assigns these orders to truckers with whom it has contracted for transportation. Anthony owned his own truck and trailer. He contracted with Pre-Fab on January 4, 1983, to transport goods.

The contract provided, in part, as follows:

> It is the intention of the parties to this contract that Contractor shall be and remain an independent Contractor and that nothing herein shall be construed as inconsistent with that status; also, neither Contractor, his drivers, employees, agents, or servants are to be considered drivers, employees, agents or servants of Carrier at any time, under any circumstances, or for any purpose.

Anthony's equipment is described in detail in the contract, and the contract requires that Anthony use that equipment in performing the contract. Anthony's compensation was 75 percent of the revenue received by Pre-Fab on each haul Anthony made. Pre-Fab paid Anthony only for hauling the loads; it did not pay him while he was driving with an empty truck to pick up a load, nor did it pay him for time he spent maintaining or inspecting his equipment. Anthony indicated that he was self-employed on his income tax forms, paid his own taxes, and took his own business deductions. Anthony received a 1099 form from Pre-Fab, which indicates the compensation paid for a contractor, as opposed to a W-2 form, which is generally used for employees. Pre-Fab did not withhold income or Social Security taxes, and Anthony did not receive vacation or holiday pay from Pre-Fab, nor did he participate in any other employment benefits.

Pre-Fab assumed liability for the property transported and also for other personal and property damage, except damage to Anthony or any of Anthony's employees. Anthony was liable for loss of or damage to his own equipment or to any equipment

used by Anthony which he did not own. Anthony was required to insure against liability arising from the use of his equipment when he was not performing under the contract. Anthony was also responsible for obtaining bobtail insurance, which is liability insurance in effect when the truck is traveling without a trailer.

Pre-Fab paid highway use taxes and fuel mileage taxes. Anthony was required to post a performance bond, and, in addition, Anthony was responsible for all operating expenses, including license fees.

Anthony had the right to hire employees, but the contract specifically provided that any employees would be Anthony's employees, not Pre-Fab's. Before Anthony could employ a driver, however, Pre-Fab had to approve the driver. The only two approved drivers for Anthony's truck were Anthony and his wife. Pre-Fab never approved any other drivers, and Anthony never had an employee.

Pre-Fab did not have authority over the selection or maintenance of Anthony's equipment, the selection of routes and facilities, or the determination of whether Anthony would accept a particular assignment. Pre-Fab did require, however, that inspectors at Pre-Fab's terminals inspect Anthony's equipment once a month.

The contract did not require Anthony to work exclusively for Pre-Fab, but allowed for "trip-leases" under certain circumstances. When trip-leasing, Anthony was required to submit logs to Pre-Fab and to communicate daily with Pre-Fab's dispatch centers. During the period that Anthony was under contract to Pre-Fab, he worked almost exclusively for Pre-Fab, trip-leasing only three times. Pre-Fab did not receive a commission for Anthony's trip-leases.

Pre-Fab purchased workers' compensation insurance that covered, at least primarily, employees and independent contractors' employees. The policy contains a classification for "Trucking NOC [not otherwise classified] & drivers." Pre-Fab's director of safety and risk management testified that "drivers" referred to employees that drive Pre-Fab company trucks.

Anthony testified he received a letter from Pre-Fab in September 1985, explaining that because of rising costs of

workers' compensation insurance, the drivers who wished to continue workers' compensation through Pre-Fab would be charged $55 per month to cover the increased costs. If Anthony wished to continue coverage through Pre-Fab, he was to sign the letter and return it to Pre-Fab, which he did. This testimony was corroborated by the testimony of Mrs. Anthony and the testimony of another driver for Pre-Fab. Although requested by interrogatory, no such letters were produced by Pre-Fab or presented by Anthony.

In October 1985, Pre-Fab began deducting $55 a month from Anthony's settlement sheets. The deduction was marked "Misc W COMP." Pre-Fab admits that this money was deducted for workers' compensation insurance. The deduction was mandatory unless the trucker provided Pre-Fab with a certificate of insurance that "he had provided his own workers' compensation coverage." Pre-Fab testified this contractual provision was to protect Pre-Fab from being held liable as a "statutory employer" if one of Pre-Fab's independent contractors did not provide coverage for the independent contractor's employees.

Anthony was not listed as an employee on Pre-Fab's insurance application, but he was included in computing the premium for the policy. A Pre-Fab official testified that the $55 deduction was reflected in the estimated annual premium for Nebraska drivers and that the money contributed to Pre-Fab's own workers' compensation premium.

Anthony testified that he believed that the $55 per month was deducted to provide workers' compensation coverage for himself. He testified that he spoke to several terminal managers about the letter of September 1985, and they led him to believe he was covered.

On November 27, 1985, Anthony called the Pre-Fab terminal in Denver, Colorado, and was told to be in Denver the morning of December 2 to pick up a load. On November 30, 1985, Anthony had his truck washed at a truck wash in Scotts Bluff County, Nebraska. Anthony testified that washing the truck is preventive maintenance, intended to maintain the value of the equipment. Anthony testified that Pre-Fab required the truckers to keep the equipment clean.

Anthony arranged to pay an extra $10 to the truck wash operator to leave the truck in the wash overnight so that the windows and doors would not be frozen shut the next morning. Anthony went to pick up the truck the following morning. He performed part of the pretrip inspection while the truck was still in the truck wash and intended to take the truck to another location to change the oil. While putting additives in the fuel tanks, Anthony slipped and fell on ice in the truck wash and injured his back, causing the injury which is the subject of this case. Anthony lost consciousness when he fell and suffered a concussion.

Findings of fact by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Cline v. County Seat Lounge, ante* p. 42, 473 N.W.2d 404 (1991).

We have held that there is no single test to determine whether a worker is an employee or an independent contractor, but the determination must be made from all the facts in the case. *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 286 N.W.2d 420 (1979); *Voycheske v. Osborn*, 196 Neb. 510, 244 N.W.2d 74 (1976).

We further said, in *Knowlton v. Airport Transportation Co.*, 235 Neb. 96, 99, 454 N.W.2d 278, 280 (1990), quoting from *Stephens v. Celeryvale Transport, Inc., supra*, that

"[w]here a written contract between the claimant and alleged employer exists, which not only denominates the relationship as that of independent contractor but also describes that kind of relationship, and nothing in the manner of performance by the parties is inconsistent with the relationship described, then the independent contractor is, as a matter of law, bound by the contract and is not to be deemed an employee within the meaning of the workmen's compensation statutes."

The written contract in this case defined the status of Anthony between the parties as an independent contractor. Interpreted in a light most favorable to the defendants, nothing in the manner of performance of Pre-Fab or Anthony contradicts this contractual statement.

Various tests to determine whether a worker is an employee or an independent contractor were discussed in *Eden v. Spaulding*, 218 Neb. 799, 359 N.W.2d 758 (1984). Among those tests is one concerning whether Social Security taxes and withholding taxes are deducted from the worker's payment. We said in *Eden* at 807, 359 N.W.2d at 763, " 'The deduction of social security taxes and the withholding of income tax tends to indicate an employer-employee relationship, while the failure to do so is a contrary indication.' " In this case, there were no such deductions, indicating an independent contractor status.

We have reviewed the entire record in view of the other tests set out in *Eden v. Spaulding, supra.* Application of those tests to the facts in this case leads to the conclusion that the compensation court did not err in finding that Anthony was an independent contractor in regard to Pre-Fab. The facts in this case are virtually indistinguishable from the facts in *Stephens v. Celeryvale Transport, Inc., supra.* That case controls the disposition of this case.

Anthony contends that "[t]he main issue in this case is whether the defendants are estopped from contending that Mr. Anthony was not covered by Workers' Compensation Policy #RWC8171 which was received into evidence as Exhibit 15." Brief for appellant at 15. We hold that contention cannot be decided by the compensation court because that court has no jurisdiction to determine estoppel issues which, in this case, are equitable in nature.

We have said, " 'It is axiomatic, however, that the parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent.' " *Black v. Sioux City Foundry Co.*, 224 Neb. 824, 829, 401 N.W.2d 679, 682 (1987).

Other courts have gone further. Subject matter jurisdiction cannot be created by waiver, estoppel, consent, or conduct of the parties. *Mahoney v. Northwestern Bell Telephone Co.*, 377 F.2d 549 (8th Cir. 1967); *Bandfield v Wood*, 104 Mich. App. 279, 304 N.W.2d 551 (1981); *Nelson v. Iowa-Illinois Gas & Elec. Co.*, 259 Iowa 101, 143 N.W.2d 289 (1966); *Steffens v. Proehl*, 171 N.W.2d 297 (Iowa 1969).

We hold that the Nebraska Workers' Compensation Court

may not acquire subject matter jurisdiction by estoppel.

The plaintiff must prove his employee status before the Workers' Compensation Court can exercise its jurisdiction to afford relief to the plaintiff. Employee status is an essential element in establishing jurisdiction of the compensation court. In *Scholz v. Industrial Comm.*, 267 Wis. 31, 40, 64 N.W.2d 204, 209 (1954), the court stated:

> In order for an applicant employee to establish a valid claim for workmen's compensation benefits against an alleged employer or the latter's insurance carrier, the employee has the burden of establishing that he was *the employee* of such alleged employer at the time of injury. . . . We, therefore, have no issue presented of a so-called affirmative defense which is subject to waiver, but rather a failure of the applicant to prove an essential element of his case, viz., that he was the employee . . . at the time of injury.

(Emphasis in original.)

Either party may raise the jurisdictional issue at any time. See *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 785, 448 N.W.2d 141 (1989). The defendant need not plead lack of jurisdiction as an affirmative defense. See *Blitzkie v. State*, 216 Neb. 105, 342 N.W.2d 5 (1983).

The holdings that jurisdiction may not be obtained by estoppel are particularly strong when the court is one created by statute, with limited jurisdiction. It has been determined by other states that workers' compensation courts in those states may not exercise equity jurisdiction, because legislatures in those states have not granted the compensation courts equitable powers. See, *Castro v. Viera*, 207 Conn. 420, 541 A.2d 1216 (1988); *Auto-Owners Ins Co v Elchuk*, 103 Mich. App. 542, 303 N.W.2d 35 (1981). In *Sieman v Postorino Co*, 111 Mich. App. 710, 716, 314 N.W.2d 736, 739 (1981), the Michigan Court of Appeals stated:

> Although the WCAB [Workers' Compensation Appeal Board] performs quasi-judicial duties, it is not possessed of inherent judicial power. . . . Rather, the board is a statutory body with specific legislatively created powers. In particular, the board lacks jurisdiction to pass upon

equitable claims. . . . The WCAB acted properly in the instant case in declining to rule on Postorino's estoppel theory.

The Nebraska Workers' Compensation Court has only the "authority to administer and enforce all of the provisions of the Nebraska Workers' Compensation Act, and any amendments thereof, except such as are committed to the courts of appellate jurisdiction." Neb. Rev. Stat. § 48-152 (Reissue 1988). The Nebraska Supreme Court has refused to extend jurisdiction to the Workers' Compensation Court to determine insurance coverage disputes because no statute expressly conferred that authority. See *Thomas v. Omega Re-Bar, Inc.*, 234 Neb. 449, 451 N.W.2d 396 (1990). "The Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute." *Thomas, supra* at 452, 451 N.W.2d at 398.

Similarly, in *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984), this court would not allow the Workers' Compensation Court to hear a motion to amend its prior award. Although a court of general jurisdiction has the power to vacate or modify its own judgment under the common law, statutory courts do not have the same power. *Smith, supra.* In *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990), this court used similar reasoning to determine that the Workers' Compensation Court had no authority to enter an award of postjudgment interest.

No Nebraska statute grants equity jurisdiction to the Workers' Compensation Court. Estoppel allegedly arising because of Pre-Fab's conduct is an equitable remedy. We hold that the Workers' Compensation Court has no jurisdiction to determine the estoppel issue raised by Anthony. We do not reach the question whether Pre-Fab is estopped to deny coverage of Anthony.

The compensation court did not err in ruling as it did. Because of our disposition of this case on these grounds, we do not reach the appellant's other assignments of error nor the appellees' cross-appeal. The judgment of the compensation court is affirmed.

AFFIRMED.

WHITE, J., participating on briefs.