EMPLOYERS INSURANCE OF WAUSAU, APPELLEE, V.
GREATER OMAHA TRANSPORTATION COMPANY,
A CORPORATION, APPELLANT, AND
DANIEL J. PECORARO, APPELLEE.

303 N.W.2d 282

Filed March 13, 1981. No. 43238.

Frost & Meyers for appellant.

John R. Timmermier of Schmid, Ford, Mooney & Frederick for appellee Employers Ins.

Mary Cannon Veed and Stephen L. Gerdes of Matthews & Cannon, P.C., for appellee Pecoraro.

Heard before BOSLAUGH, CLINTON, and BRODKEY, JJ., and REIMER and HIPPE, District Judges.

HIPPE, District Judge.

The question in this case is whether a cabdriver, operating under a lease, is entitled to workmen's compensation benefits. The Nebraska Workmen's Compensation Court held that he was, and we affirm.

Employers Insurance of Wausau brought this action. They had written a policy of workmen's compensation insurance to Greater Omaha Transportation Company. On January 1, 1979, Daniel J. Pecoraro was injured while driving a leased cab. The insurance company took the position that Pecoraro was entitled to benefits as an employee; the transportation company claimed that the lease arrangement established

independent contractor status and Pecoraro was not entitled to benefits. Pecoraro cross-claimed as a defendant, claiming benefits.

The transportation company's affiliates held two certificates of public convenience and necessity from the Nebraska Public Service Commission. Both authorized the operations of taxicabs in Omaha, Nebraska, and vicinity. One was in the name of Yellow Cab Company — the other was Checker Cab Company. Both were issued on April 10, 1978. To provide that service, Greater Omaha had about 40 employees for clerical, dispatching, and maintenance functions. They owned, maintained, and insured a number of taxicabs. To secure drivers, Greater Omaha prepared a "menu of leases." This offered leases of cabs on a variety of bases, ranging from 8 hours to 1 week.

The defendant Dan Pecoraro, along with Nellie Burris, had a 1-week lease. Each would pay one-half on 12-hour shifts. The lease would be paid at the end of a shift from fares received, or from personal funds if fares were insufficient. The excess or deficiency of fares over the set lease charge, plus cost of gas, would be the driver's profit or loss. The lease could be terminated or renewed by either party at the end of a week.

A system of radio communications was established so that calls for cabs would come to Greater Omaha's central office. The fare would be offered to all cabs and they would bid for it. The dispatcher decided who would make the pickup. There were also central stands at different locations where the drivers could wait in line to pick up fares. If he had enough of his own business, a driver could theoretically function without bidding or using the stands, but no examples of any drivers like that were pointed out.

The lease itself asserted that Greater Omaha exercised no control over drivers and that drivers were independent contractors, not employees. The totality of the circumstances between the company and Pecoraro was a subject of disagreement in the testi-

mony. Jerry C. Wilson, the company's president, described the company's control as nonexistent. Daniel Pecoraro, on the other hand, testified to experience over many years with various employee arrangements and the lease involved here. He described the difference between the various arrangements as nonexistent.

Upon our review of the record, there are some aspects of the arrangement which preponderate toward either conclusion. The determination of status as an employee, on the one hand, or as independent contractor, on the other, is a fact question for the trier of fact. The review is to see if sufficient competent evidence warrants the factfinder's conclusion. Such a conclusion will not be set aside unless clearly wrong. *Williams v. Williams Janitorial Service*, 207 Neb. 344, 299 N.W.2d 160 (1980).

The compensation court found that the company exercised control over its lessee-drivers. There was substantial evidence tending to show that an operations guide and memoranda to drivers regulated their operations. The guide is 40 pages of comprehensive instructions about procedures covering every aspect of the driver's job. A separate communications guidebook contains a map of city areas showing cab stand locations and two-way radio procedures for pickups at those locations. A new driver rode with an experienced one at the beginning of his period to learn company procedures. The teacher got a discount on his lease for teaching. A driver also got a lease adjustment if he did not take his cab out because of an excused absence. Although the evidence does not show examples of anyone being discharged for violating any rules, the inference can be made that the lessee-drivers conformed their operations to the guidebook-memoranda rules.

The materials, or tools of the trade, were furnished by the company. The lease required the personal service of the lessee; he could not sublease. The ar-

rangement was terminable by either party each week similar to an employer-employee arrangement. The worker is not in a distinct occupation, because the company held the certificate of public convenience to provide cab services, and the lessee did that work. The type of work is usually done without supervision whether the arrangement was lessee or employee, and the skill required on the job is such that it can be done by employees rather than specially skilled independent workmen.

All the above factors, along with the critical factor of control, tend to establish an employee status. The only factors supporting an independent contractor status are that no withholdings are made from pay and the method of payment, which places the gross income with the driver and a fixed lease payment to the company.

*Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 286 N.W.2d 420 (1979), is relied upon by Greater Omaha as controlling. That case involved an interstate freight carrier lease with an owner of a truck-tractor. The written contract denominated an independent contractor status, all of its terms indicated such a relationship, and the way the agreement was carried out did not indicate an employee relationship. Under such facts, the owner was held to be an independent contractor as a matter of law, and an employee holding by the Workmen's Compensation Court was reversed. That case is different from this one because, here, the total arrangement indicates an employee status, not an independent contractor. In the *Stephens* case, the owner was undertaking work with control asserted only over the result of the work and with no control over the method or means to be used. Here, the evidence can be read otherwise; thus, this case should not be decided as a matter of law.

The factors we have outlined in analyzing the total arrangement are taken from *Voycheske v. Osborn*, 196 Neb. 510, 244 N.W.2d 74 (1976). That opinion

comprehensively outlines the analysis and questions to ask in making an employee-independent contractor determination. The Workmen's Compensation Court used the same analysis. We conclude there was substantial evidence to support its finding, and that it was correct in its conclusion. The decision is accordingly affirmed.

The employee, Pecoraro, is awarded an additional $500 attorney fee for this appeal, to be paid by the employer since no reduction in the award was made.

AFFIRMED.