STEPHEN R. HEMMERLING, APPELLANT, v. HAPPY CAB CO., APPELLEE.

530 N.W.2d 916

Filed May 5, 1995.   No. S-94-173.

Howard A. Kaiman for appellant.

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

LANPHIER, J.

While operating a Happy Cab Co. taxicab, appellant, Stephen R. Hemmerling, was involved in a traffic accident and suffered personal injuries. Hemmerling's claim for workers' compensation benefits was denied, and Hemmerling filed a petition in the Workers' Compensation Court. In his petition, Hemmerling stated that the matters in dispute were "whether accident occured [sic] arising out of course of employment, extent of disability[,] whether plaintiff was an employee, medical bills." The court held that Hemmerling was an independent contractor on the date of the accident and not an employee. Therefore, the court denied Hemmerling's claim for workers' compensation benefits without reaching any of the other disputed matters. Hemmerling appealed to the Workers' Compensation Court review panel, which affirmed the denial of benefits. Hemmerling appealed the review panel's decision to the Nebraska Court of Appeals, which also held that Hemmerling was an independent contractor rather than an employee and affirmed the lower courts' denial of benefits. *Hemmerling v. Happy Cab Co.*, 94 NCA No. 44, case No. A–94–173 (not designated for permanent publication). We granted Hemmerling's petition for further review and reverse the holdings of the lower courts. The contractual agreements between the parties placed the right of control over the taxicab in Happy Cab, and Happy Cab in fact exercised extensive control over the taxicab and its only driver, Hemmerling. Therefore, as a matter of law, Hemmerling is an employee rather than an independent contractor and thus is entitled to workers' compensation coverage. We remand the cause for a determination of the remaining matters in dispute.

## STATEMENT OF FACTS

On June 1, 1992, while Hemmerling was operating a Happy Cab taxicab, the taxicab was struck from behind by a rental truck, and Hemmerling was injured. Hemmerling testified that after the accident, he suffered lightheadedness and ringing in his ears. Hemmerling tried to return to work, but he did not feel he could safely drive a cab, and left the occupation.

At the time of the hearing in Workers' Compensation Court, Happy Cab operated approximately 95 cabs. Richard Anderson, president of Butler Holdings Company, which owns Happy Cab, testified that the Nebraska Public Service Commission (PSC) requires the cabs to be owned by the cab company. The cab company then leases the cabs to drivers. On September 13, 1991, the parties executed two agreements, a rental agreement and an equipment lease agreement.

In the rental agreement, Happy Cab is referred to as "Equipment Company" and Hemmerling is referred to as "Renter." Under the rental agreement, Happy Cab provided a taxicab to Hemmerling for a term of 1 month, such term to be automatically renewed unless canceled pursuant to the terms of the agreement. Hemmerling agreed to pay Happy Cab $275 per week for the use of the taxicab. Hemmerling was required to pay all expenses in operating and maintaining the taxicab. Further, paragraph 6 of the rental agreement states:

> Renter represents that it is renting this equipment in lieu of buying this or a comparable motor vehicle to permit Renter to enter into an independent contractor agreement with a certificated motor carrier approved by Equipment Company wherein Renter will provide a qualified and approved driver and fully maintained equipment to supplement the motor vehicle fleet of the motor carrier pursuant to the applicable directives of the Nebraska Public Service Commission.

By the terms of the second agreement, the equipment lease agreement, also executed on September 13, Hemmerling leased the taxicab to Happy Cab for a term of 1 year. Anderson testified that the lease agreement was drafted by the PSC and that the leases of all current cab operators had to be submitted to the PSC on a monthly basis.

In the equipment lease agreement, Hemmerling is referred to as the "lessor" and Happy Cab is referred to as the "lessee." The following terms of the equipment lease agreement are pertinent to this issue:

> 2. **LESSOR\*, LESSEE\*** shall pay for all gasoline, oil and other operating expenses, and all repairs necessary to keep such equipment in good running condition throughout the term of this lease. **LESSOR\*, LESSEE\*** shall be

responsible and pay all necessary licenses for such equipment as may legally be required. . . .

. . . .

*4. Possession and control of the equipment during the period of this lease is entirely vested in the Lessee, in such way as to be good against all the world, including the Lessor. Operation of the equipment shall be under the* **exclusive control and supervision of the Lessee** *which will be operated by Lessee in the ordinary course of Lessee's business.*

5. The driver of the equipment shall be exclusively the employee of the **LESSOR\*, LESSEE\*** and the **LESSOR\*, LESSEE\*** will pay the salaries of the personnel necessary to operate the equipment, and all cost of Workmen's Compensation Insurance or other employee insurance and taxes required by law.

(Emphasis supplied.)

Paragraphs 2 and 5 contain the alternative terms "lessor" and "lessee." The agreement states the parties were to strike the party (marked by an asterisk) which did not apply. The parties failed to strike the inapplicable party in both paragraphs. By the terms of the above agreements, Hemmerling had use of the cab on a 24–hour basis. Hemmerling had no set working hours but, according to PSC rules, could drive no more than 12 hours during a 24–hour period. Hemmerling could make personal use of the cab, but he could not subcontract the vehicle to another driver or set up his own taxi service. Although Happy Cab did not set hours for its drivers, it would call drivers to work if needed. If called, the driver was not required to respond.

Hemmerling kept all the fares generated by driving the cab. Drivers obtained passengers by taking orders off the radio. A driver would request an order for a fare from the dispatcher by first driving to a specified zone and calling the dispatcher by radio to notify the dispatcher that the driver was available in the zone. An order was then offered to the driver on a basis of "first come, first served." If the driver refused the order, the order would then be offered to the next driver. Once a driver refused an offer, Happy Cab required the driver to drive to another zone before that driver could receive another offer.

Drivers could solicit their own business independently of the dispatch service. Passengers could be solicited at the airport, the bus depot, and hotels. However, drivers were not allowed to carry beepers or cellular phones in their cabs. Anderson testified that drivers were not permitted phones or beepers for safety reasons.

Organizations such as the public schools and the Department of Social Services contracted with Happy Cab for cab service and paid for or charged this service directly to Happy Cab. In those instances, 100 percent of the fares generated were turned over to the driver by Happy Cab.

New drivers were required to complete an application stating their work history and to obtain a permit from the Omaha police department. Pursuant to Happy Cab policy, drivers were subject to drug screening and a criminal history background check before being hired. New drivers were given a collection of documents entitled "Taxicab Trainee Guide." The trainee guide contained information regarding Happy Cab's business principles, radio use, customer service, et cetera. At their option, new drivers received orientation regarding the dispatching procedures and could drive with a more experienced driver in order to learn how to work the radio and other operational procedures.

Drivers' employment could be terminated if Happy Cab received three complaints from passengers.

Drivers purchased their own gasoline and paid for the maintenance and repairs of their vehicles. Drivers were required to have their cabs serviced and inspected once a month by Happy Cab. In exchange for $20, Happy Cab changed the oil, air filter, and oil filter. The drivers were not allowed to have the monthly inspection done elsewhere, and if one failed to have the cab inspected, the driver was "taken off the air" until he or she brought the cab in for service. Being taken off the air meant that the dispatcher would not issue any orders to the driver.

Happy Cab had public liability insurance with a self–insurance retention of $25,000 per incident. Drivers contributed $25 per week to pay the claims incurred under the $25,000 deductible. The self–insurance fund was administered by Happy Cab's safety department, and that department

determined whether to pay any claims. Initially, Happy Cab provided an accounting of the self–insurance fund to the drivers and had returned some $40,000 in excess payments. Happy Cab discontinued accounting to the drivers sometime in 1990.

As stated above, Hemmerling paid Happy Cab $275 per week to lease the taxicab, $20 monthly inspection fee, and $25 per week self–insurance fee, plus he paid for all gasoline and other operating expenses. Hemmerling kept 100 percent of all fares received. The fare rates are set by the PSC. Happy Cab did not withhold any Social Security, state, or federal income tax.

## ASSIGNMENTS OF ERROR

In his petition for further review, Hemmerling assigns six errors. In summary, he asserts the Court of Appeals erred by holding that as a matter of law, there is no single test or conclusive factor which determines whether a worker is an employee or an independent contractor. Additionally, Hemmerling asserts that the Court of Appeals erred in determining that there was sufficient evidence in the record to support the trial court's finding that he was an independent contractor and in ignoring contrary evidence which supported a finding that he was an employee.

## STANDARD OF REVIEW

The findings of fact made by a Workers' Compensation Court trial judge are not to be disturbed upon appeal to a Workers' Compensation Court review panel unless they are clearly wrong on the evidence or the decision was contrary to law. Neb. Rev. Stat. § 48–179 (Reissue 1993). If the record contains evidence to substantiate the factual conclusions reached by the trial judge, the review panel shall not substitute its view of the facts for that of the trial judge. See *id*.

In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, the appellate court reviews the findings of the single judge who conducted the original hearing. Neb. Rev. Stat. § 48–185 (Reissue 1993). See, also, *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994).

> The judgment made by the compensation court after review shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the

compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the compensation court do not support the order or award.

§ 48-185 (Reissue 1993).

Ordinarily, when a court is presented with a dispute regarding a party's status as an employee or an independent contractor, the party's status is a question of fact which must be determined after consideration of all the evidence in the case. See, *Delicious Foods Co. v. Millard Warehouse*, 244 Neb. 449, 507 N.W.2d 631 (1993); *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 286 N.W.2d 420 (1979); *Curry v. Bruns*, 136 Neb. 74, 285 N.W. 88 (1939). However, where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law. *Stephens v. Celeryvale Transport, Inc., supra*. See, also, *Smith v. Butler Manuf. Co.*, 230 Neb. 734, 433 N.W.2d 493 (1988).

## ANALYSIS

The right of control is the chief factor distinguishing an employment relationship from that of an independent contractor.

An independent contractor is one who, in the course of an independent occupation or employment, undertakes work subject to the will or control of the person for whom the work is done only as to the result of the work and not as to the methods or means used. Such a person is not an employee within the meaning of the workmen's compensation statutes.

*Stephens v. Celeryvale Transport, Inc.*, 205 Neb. at 20, 286 N.W.2d at 425. Accord *Sortino v. Miller*, 214 Neb. 592, 335 N.W.2d 284 (1983). See, also, *Voycheske v. Osborn*, 196 Neb. 510, 244 N.W.2d 74 (1976).

Hemmerling argues that the lower courts erred by holding that as a matter of law, there is no single test or determinative factor which determines whether a worker is an employee or an independent contractor. In his brief in support of his petition for

further review, Hemmerling argues that the relationship created by the written agreements between the parties was that of employer–employee because the equipment lease agreement vested the right of control of the taxicab in Happy Cab. He asserts that the traditional and decisive test of the employer–employee relationship is the right of the employer to control the details of the work.

In its opinion, the Court of Appeals stated that this court has held that there is no single test to determine whether a worker is an employee or an independent contractor, but that the determination must be made from all the facts in the case. *Hemmerling v. Happy Cab Co.*, 94 NCA No. 44, case No. A–94–173 (not designated for permanent publication). The Court of Appeals further stated that Hemmerling's status could not be discerned solely from the two written agreements between the parties, primarily because those documents were inherently ambiguous. *Id.*

We have repeatedly stated that although control or the right of control is the chief factor to be considered when identifying one acting on behalf of another as an employee or an independent contractor, it is not the conclusive factor. *Delicious Foods Co. v. Millard Warehouse, supra*; *Eden v. Spaulding*, 218 Neb. 799, 359 N.W.2d 758 (1984); *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983); *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983).

Ordinarily, when a court is presented with a dispute regarding a party's status as an employee or an independent contractor, there is no contract vesting the right of control in an employer, and in such cases, the party's status is a question of fact. See *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 286 N.W.2d 420 (1979). See, also, *Delicious Foods Co. v. Millard Warehouse, supra*; *Curry v. Bruns*, 136 Neb. 74, 285 N.W. 88 (1939). However, where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law. *Stephens v. Celeryvale Transport, Inc., supra*. See, also, *Smith v. Butler Manuf. Co., supra*. Here, we are presented with a question of law for the reasons more fully explained below. By contract, Happy Cab had the right to control Hemmerling. Further, an application of the analysis we

have used to discern the true nature of an employment versus independent contractor relationship creates a clear inference that a master–servant relationship exists.

Both an employer–employee and an employer–independent contractor relationship arise from the contract between the parties. *Stephens v. Celeryvale Transport, Inc., supra.* In *Knowlton v. Airport Transportation Co.*, 235 Neb. 96, 454 N.W.2d 278 (1990), we stated that when there is a written contract between the parties which denominates and describes the relationship as that of independent contractor, and nothing in the manner of performance by the parties is inconsistent with the relationship described, then the independent contractor is not deemed to be an employee as a matter of law. "If there exists a written contract, it must, of course, be considered and may be of prime importance. . . . However, a writing which merely denominates the relationship may not be used to conceal the true arrangement." (Citations omitted.) *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. at 19, 286 N.W.2d at 424.

Hemmerling argues that *Knowlton* does not apply in this case because the contract in this matter denominates the relationship as one of employment rather than as that of an independent contractor. He speculates that public policy provides the rationale for looking beyond a contract denominating the relationship as that of an independent contractor and that the same public policy precludes doing so when the relationship is denominated as one of employment. Hemmerling's argument fails because neither contract clearly or consistently denominates the relationship between the parties. In fact, in the quoted sections above, Hemmerling is variously described as an independent contractor, a lessor, a lessee, a renter, and a driver. However, the contracts between the parties are important not due to the labels they used, but because in those documents we can discern that Happy Cab possessed the right to control the equipment. That controls Hemmerling.

Paragraph 4 of the equipment lease agreement vests the exclusive control, supervision, and possession of the taxicab in Happy Cab. Paragraph 4 gives Happy Cab the right to control the only equipment used by Hemmerling. This language does not denominate the relationship between the parties; rather, it

proves the first, and most important, factor, which thus establishes that an employment relationship existed between the parties. According to paragraph 4, Happy Cab had the right to control the methods or means used by Hemmerling in the course of operating the taxicab by virtue of its exclusive control over the taxicab. Although there are ambiguities in the equipment lease agreement arising from the parties' failure to strike the surplus terms, those ambiguities do not detract from the clear right of control possessed by Happy Cab by virtue of paragraph 4.

When previously presented with the question of whether a cabdriver operating under a lease is entitled to workers' compensation benefits, we analyzed the conduct of the parties and concluded that the cabdriver was an employee. *Employers Ins. of Wausau v. Greater Omaha Trans. Co.*, 208 Neb. 276, 303 N.W.2d 282 (1981). The evidence in this case is strikingly similar to the evidence leading us to conclude that an employment relationship existed in *Employers Ins. of Wausau.*

The evidence indicates here, however, that not only did Happy Cab possess the right to control, it exercised such control. Happy Cab permitted Hemmerling 24–hour use of his vehicle, but the PSC limited operation of the vehicle as a taxicab to no more than 12 hours during a 24–hour period. Happy Cab prohibited Hemmerling from subcontracting the vehicle or setting up his own taxi service. Hemmerling could solicit passengers at the airport, the bus depot, and hotels but was not permitted to carry a beeper or a cellular phone. As we noted in *Employers Ins. of Wausau*, theoretically a driver could function without using the dispatch service, but no evidence of any drivers' doing so was offered. The solicitation of fares from the Happy Cab dispatcher was heavily controlled by use of zones and other rules. Hemmerling was required to have his cab serviced and inspected once a month by Happy Cab or be terminated from employment. Hemmerling was required to pay into the self–insurance fund or be terminated from employment. A fairly comprehensive training guide expounding Happy Cab's operations and customer service philosophy was provided to Hemmerling. All of these facts clearly support the conclusion that Happy Cab exerted control over the means and the methods

Hemmerling used in the course of operating the taxicab.

Although the right to control the means or methods of the work is the chief factor in resolving a dispute regarding the true nature of the relationship between the parties, the answer fully lies in the application of the analysis that we recently reiterated in *Delicious Foods Co. v. Millard Warehouse*, 244 Neb. 449, 507 N.W.2d 631 (1993). That analysis is that factors to be considered are

> (1) the extent of control which, by the agreement, the employer may exercise over the details of the work, (2) whether the one employed is engaged in a distinct occupation or business, (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision, (4) the skill required in the particular occupation, (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work, (6) the length of time for which the one employed is engaged, (7) the method of payment, whether by the time or by the job, (8) whether the work is part of the regular business of the employer, (9) whether the parties believe they are creating an agency relationship, and (10) whether the employer is or is not in business.

*Delicious Foods Co. v. Millard Warehouse*, 244 Neb. at 456, 507 N.W.2d at 636 (citing *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983)).

Not all of the remaining factors are applicable in this case, but those that are further support the conclusion that an employment relationship existed between the parties. Hemmerling was not engaged in a distinct occupation or business from that of Happy Cab. Happy Cab argues that it was in the business of leasing cabs, but in fact, Happy Cab held the certificate of public convenience to provide cab services, and Hemmerling did that work. The type of work is that which can be done by employees rather than specially skilled independent contractors. *Employers Ins. of Wausau v. Greater Omaha Trans. Co.*, 208 Neb. 276, 303 N.W.2d 282 (1981).

It is a question of interpretation as to whether Happy Cab or

Hemmerling supplied the prime instrumentality, the taxicab. Happy Cab rented the cab to Hemmerling. On that very same day, Hemmerling leased the cab back to Happy Cab. The net effect of these transactions is that Happy Cab supplied the instrumentality of the trade.

Another key factor is the method of payment, whether by the time or by the job. Here, Happy Cab argues that Hemmerling was working by the job, in that he kept all fares and paid his own expenses. Thus, Happy Cab asserts that Hemmerling was working for a profit and that he controlled that profit. However, Hemmerling was faced with fixed expenses such as $275 cab rental and gasoline. A ceiling was placed on Hemmerling's income given that the rates were set by the PSC and that he could drive no more than 12 hours in any 1 day. Clearly, Hemmerling's ability to control his own profit, or wage, was limited.

Happy Cab did not withhold taxes. It is true that we have said that " ' "[t]he deduction of social security taxes and the withholding of income tax tends to indicate an employer–employee relationship, while the failure to do so is a contrary indication." ' " *Anthony v. Pre–Fab Transit Co.*, 239 Neb. 404, 409, 476 N.W.2d 559, 563 (1991) (quoting *Eden v. Spaulding*, 218 Neb. 799, 807, 359 N.W.2d 758, 763 (1984)). However, as in *Employers Ins. of Wausau*, this is the only factor that supports an independent contractor status, and given all the other indicia that an employment relationship existed between the parties, this one factor does not sufficiently support a finding of an independent contractor relationship.

## CONCLUSION

We reverse the order of the Court of Appeals which affirmed the review panel's order upholding the trial court's decision, and remand the matter to the trial court for a determination of the benefits due Hemmerling.

REVERSED AND REMANDED WITH DIRECTIONS.

CONNOLLY, J., not participating.

FAHRNBRUCH, J., concurs in the result.