ASHLAND-GREENWOOD PUBLIC SCHOOLS, APPELLANT, V.
DEWAYNE L. THORELL AND NEBRASKA WORKERS'
COMPENSATION TRUST FUND, APPELLEES.

723 N.W.2d 506

Filed October 17, 2006.    No. A-05-1446.

Joseph W. Grant, of Hotz, Weaver, Flood, Breitkreutz & Grant, for appellant.

Jon Bruning, Attorney General, Lisa Martin-Price, and Chris Seifert, Senior Certified Law Student, for appellee Nebraska Workers' Compensation Trust Fund.

IRWIN, SIEVERS, and CARLSON, Judges.

SIEVERS, Judge.

DeWayne L. Thorell's former employer, Ashland-Greenwood Public Schools (Ashland-Greenwood), has filed this action seeking to shift part of the burden of paying Thorell's weekly permanent total disability benefits to Nebraska's Workers' Compensation Trust Fund (Trust Fund), formerly known as the Second Injury Fund. Ashland-Greenwood asserts that because it retained Thorell in its employment after having knowledge of his preexisting permanent disability, the Trust Fund bears part of the responsibility for such permanent total disability payments under Neb. Rev. Stat. § 48-128 (Reissue 2004). The Nebraska Workers' Compensation Court trial judge found that although the basic requirements of § 48-128 for such contribution by the Trust Fund were satisfied, the provision of such statute that "the employer must establish by written records that [it] had knowledge of the preexisting permanent partial disability . . . at the time the employee was retained in employment" was not proved. Ashland-Greenwood now appeals to this court the affirmance of the trial judge's decision by the Workers' Compensation Court

review panel. We hold that the trial judge erred as a matter of law in rejecting Ashland-Greenwood's claim for contribution from the Trust Fund by imposing upon Ashland-Greenwood a requirement of current possession of the written records and by failing to consider the import of the 1987 "[J]oint Application for Approval of Final Lump Sum Settlement" and the order of the district court of Douglas County approving such settlement between Thorell and Ashland-Greenwood. We reverse the decision of the review panel and direct the review panel to remand the matter to the trial judge with directions to determine the nature and extent of the Trust Fund's contribution to Thorell's permanent total disability payments.

## FACTUAL AND PROCEDURAL BACKGROUND

Although we are presented with a record containing voluminous exhibits concerning Thorell's medical history over an extended period of time, as well as numerous evaluations of his resulting disability by various counselors, we largely dispense with recitation thereof, because the core facts necessary to resolve this appeal were largely stipulated to by the parties or there is no meaningful dispute about them. Additionally, the decision of the trial judge was detailed, comprehensive, and well organized, and thus provides a convenient backdrop for our review and analysis.

Thorell worked as a teacher for Ashland-Greenwood from 1972 until early in 1998. He suffered a serious back injury arising out of and in the course of such employment in 1979, after which he ultimately underwent three lumbar spine operations. Although he returned to work, he continued to experience residual pain and cramping, and he received intermittent temporary total disability payments for 50⅔ weeks at the rate of $153.02 per week, together with nearly $32,000 in medical expenses from the 1979 accident and injury.

On November 2, 1987, a "[J]oint Application for Approval of Final Lump Sum Settlement" was filed and approved by the then presiding judge of the Nebraska Workers' Compensation Court. The settlement application named Ashland-Greenwood and its insurer as defendants and Thorell as plaintiff. The settlement provided for a lump-sum payment of $9,554.07, calculated on

the basis of "permanent partial disability of 25% to the body as a whole," together with "[a]ddditional consideration" of $9,500, for a total settlement of $19,054.07. The record shows that such settlement was also filed in the district court for Douglas County and approved by a judge of that court.

Thereafter, on January 5, 1995, Thorell suffered another injury arising out of and in the course of his employment with Ashland-Greenwood, when he tripped over a student's bookbag, which injury resulted in lumbar spine surgery in March 1998 and cervical spine surgery in October 1998. Thorell has not worked since early 1998 and testified that his condition prevents him from ever returning to work. The January 1995 accident and injury is the subject of this litigation.

On July 23, 2003, Ashland-Greenwood filed its petition in the Workers' Compensation Court against Thorell and the Trust Fund. Ashland-Greenwood alleged that Thorell had suffered injuries to his back in the course of his employment as a result of an accident on January 5, 1995, and that prior to such accident, Thorell had sustained "a significant back injury which resulted in a 25% permanent partial disability to the body as a whole." Ashland-Greenwood further alleged in its petition that it had "specific knowledge of said prior injury throughout the term [of Thorell's] employment, and retained . . . Thorell in [its] employ with full knowledge of the preexisting back injury," and that it retained written records documenting the prior injury. Ashland-Greenwood then alleged the statutory prerequisites of § 48-128, which provides for a shifting of a portion of the liability for the workers' compensation benefits from the employer to the Trust Fund. We summarize § 48-128 as follows: If an employee has a preexisting permanent partial disability, which is likely to be a hindrance or an obstacle to his or her obtaining employment and which was known to the employer prior to the occurrence of any subsequent compensable injury, and such employee receives a subsequent compensable injury resulting in additional permanent partial disability or permanent total disability so that the degree or percentage of disability caused by the combined injuries is substantially greater than that which would have resulted from the last injury considered alone, then the employer at the time of the last injury shall be liable only for

the degree or percentage of disability that had resulted from the last injury, and the additional disability shall be compensated out of the Trust Fund.

Thorell's answer to the petition alleged that he is permanently and totally disabled, and we note that § 48-128 does not affect Thorell's payments other than who pays what portion of the benefits. The Trust Fund filed a general denial and prayed that Thorell be awarded benefits from the Trust Fund "only after due proof of all elements set forth in Neb. Rev. Stat. § 48-128 (1993)." Additional facts from the trial evidence will be discussed either in our summary of the trial judge's decision or in our analysis of the issues presented on appeal.

## TRIAL JUDGE'S DECISION

The trial judge's decision began by noting that the parties initially stipulated that Thorell was employed by Ashland-Greenwood on January 5, 1995, at which time he sustained an injury in an accident arising out of and in the course of his employment, and that he gave proper notice of the accident and injury to Ashland-Greenwood. The trial judge found that on January 5, Thorell was earning an average weekly wage of $525 and that he had incurred periods of temporary partial disability and temporary total disability thereafter.

The trial judge first decided the question of the nature and extent of Thorell's injury and its causal nexus to the accident, which the parties had stipulated Thorell suffered. The judge found that Thorell had proved the nature and extent of his injury, as well as the necessary causal connection to his employment. The trial judge then turned to the matter of disability, finding that "the legitimacy of the defendant Thorell's assertion that he was rendered permanently and totally disabled as a result of the stipulated accident does not appear to be in serious contention." Even so, the judge, after referring to specific medical and vocational rehabilitation opinions, which we do not detail, concluded that Thorell was in fact rendered permanently and totally disabled as a result of the January 5, 1995, accident. The judge also found that Thorell was temporarily totally disabled from February 5, 1998, through November 1, 1999, entitling him to temporary total disability payments for such period in the amount of $350 per week and a like amount for permanent and total disability from and

after November 1, 1999. Although the trial judge made specific findings and an award with respect to medical benefits, such are not an issue in this appeal, and we discuss that matter no further. The judge made no provision for vocational rehabilitation, citing Thorell's injuries, limitations, and age.

The trial judge then turned to the seminal issue in the case, which he described as "whether or not [Ashland-Greenwood] has sufficiently proven or otherwise established its entitlement to shift liability for the payment of certain [permanent total disability] benefits to the defendant Thorell to the . . . Trust Fund." In the trial judge's discussion of the key issue, he concluded that under § 48-128(1)(b), Ashland-Greenwood must establish by written records that it had knowledge of Thorell's preexisting permanent partial disability at the time Thorell was retained in employment. The trial judge noted the Trust Fund's strenuous objection that "no written records have been produced" by Ashland-Greenwood. The trial judge concluded that "the evidence submitted does indicate that no such written record is to be found." The trial judge found that Ashland-Greenwood "essentially concedes that it lacks the necessary 'written record' but argues that it had actual knowledge of [Thorell's] disability." The judge further found that at one time in the past, Ashland-Greenwood possessed the required written records memorializing its actual knowledge of Thorell's preexisting permanent disability.

While the evidentiary record certainly contains evidence allowing the conclusion that Ashland-Greenwood had actual knowledge of Thorell's preexisting injury when retaining him in its employment after the 1979 injury, we do not recite that evidence, because as discussed more fully in our analysis section, actual knowledge in a case such as this is simply insufficient as a matter of law to trigger the provisions of § 48-128 under established precedent.

The evidence with respect to written records comes from several sources, including Craig Pease, the superintendent of schools for Ashland-Greenwood from 1988 through the time of trial. In his testimony, Pease discussed the matter of storage of certain documents between 1979 and 1995. Pease testified that the old records were stored in the basement of the school facility but that

in 1988, there was an asbestos cleanup, during which "a lot of things . . . were removed and destroyed by the asbestos company because of asbestos materials, and there would have been . . . some old paperwork, and that would have been down there." Pease also discussed a reconstruction project involving the basement in approximately 1996 or 1997 when the basement was renovated by taking the roof off the building and placing an addition on top thereof, which resulted in disruption of the contents of the basement because the basement did not have a roof throughout the winter.

Additionally, Ann Taylor testified that she worked at Ashland-Greenwood continuously for 23 years, first as secretary to the superintendent and then as business manager beginning in approximately 1982 or 1983. Taylor testified that she retired in 1994. Taylor stated that she prepared and signed the first report of injury concerning Thorell's January 10, 1979, injury. Taylor also testified about two other first reports of other unrelated injuries of Thorell. Taylor testified that all three such first reports would have been stored in the office vault but that "every five or ten years," such documents would be "pack[ed] in boxes, label[ed,] and store[d] in the basement of the school building." Taylor also testified that "workers' comp claims . . . would be in the personnel files for a while," but that they would be cleaned out after a year or two and stored in the basement. Taylor admitted that she did not know which documents may or may not have been destroyed. When shown a copy of the "[J]oint Application for Approval of Final Lump Sum Settlement" previously referenced herein, Taylor testified that it would have been a document retained by Ashland-Greenwood and placed in storage in the basement, but she acknowledged that she did not "know one way or the other where those documents may have gone."

The trial judge cited this court's decision in *Baughman v. United-A.G. Co-op*, 7 Neb. App. 936, 586 N.W.2d 836 (1998), as precedent he was bound to follow, and he concluded:

> This Court like the court in Baughman has no doubt that [Ashland-Greenwood] had actual knowledge of the defendant Thorell's preexisting permanent disability as well as possession of a written record at some point in the past memorializing that actual knowledge. Yet, neither circumstance is

sufficient. Fair or unfair, the Legislature has mandated that a strictly limited method of proving an employer's knowledge must be established. [Ashland-Greenwood] simply has not met that requirement. Hence, [Ashland-Greenwood's] claim against the . . . Trust Fund must be denied as one of the requisite elements for the shifting of liability has not been met.

Ashland-Greenwood sought review by a three-judge review panel of the Workers' Compensation Court, which affirmed the trial judge's decision in a brief opinion. Ashland-Greenwood now appeals to this court.

## ASSIGNMENTS OF ERROR

Ashland-Greenwood presents two assignments of error, which we restate as follows: (1) The review panel erred as a matter of law in not accepting the factual finding by the trial judge that Ashland-Greenwood had possession of a written record in the past memorializing its knowledge of Thorell's preexisting permanent disability, given that there was sufficient competent evidence in the record to support such a factual determination, and (2) the review panel erred as a matter of law in affirming the trial judge's dismissal of Ashland-Greenwood's action against the Trust Fund, because the trial judge erred as a matter of law in finding that Ashland-Greenwood had failed to satisfy the written records requirement of § 48-128(1)(b).

## STANDARD OF REVIEW

The findings of fact made by a Workers' Compensation Court trial judge are not to be disturbed upon appeal to a Workers' Compensation Court review panel unless they are clearly wrong on the evidence or the decision was contrary to law. *Hemmerling v. Happy Cab Co.*, 247 Neb. 919, 530 N.W.2d 916 (1995). In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, the appellate court reviews the findings of the single judge who conducted the original hearing. *Id.* With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005).

## ANALYSIS

*Change by Review Panel of Trial Judge's Factual Determination.*
Ashland-Greenwood's first assignment of error is that the review panel made a different factual determination about the written records kept by Ashland-Greenwood than did the trial judge, but the review panel did so without finding the trial judge's factual conclusions clearly wrong. The trial judge's key finding on the crucial facts was that Ashland-Greenwood had knowledge of Thorell's preexisting disability, as well as "possession of a written record at some point in the past memorializing that actual knowledge. Yet neither circumstance [was] sufficient." The review panel's decision is more specific in that it said that according to Taylor, the "[J]oint Application for Approval of Final Lump Sum Settlement" and other such records " 'would have been' " retained by Ashland-Greenwood, but that Taylor "had no knowledge regarding the present location of [Thorell's] records." The review panel's decision further stated that "[w]hile the customary business practices of the school district would indicate the necessary [Thorell] records were retained by the district, exactly what record was retained and when it was lost or destroyed is unknown." The review panel then concluded that the "facts of the case do not easily encourage an exception to the statutory written record requirement." We are not convinced that the review panel made a different factual determination than did the trial judge, but even if it did, it is clear that the determinative matter for both the trial judge and the review panel was the "current possession" of the written records. As discussed in detail below, such focus of the trial judge and the review panel is incorrect. In conclusion, any difference in factual findings between the trial judge and the review panel is not material to our decision. Thus, we discuss this assignment no further. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

*Effect of Lump-Sum Settlement and Location of Written Records.*
Initially, we deal with the fact that the trial judge found that Ashland-Greenwood had "actual knowledge" of Thorell's preexisting disability yet retained him as an employee after his 1979 accident and the resulting disability. It is true that in the

case of an obvious injury inevitably leading to undisputed actual knowledge on the part of the employer of the employee's pre-existing permanent disability, such as an amputated arm, the written records requirement may be dispensed with. See *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981), supplemented by *Akins v. Happy Hour, Inc.*, 209 Neb. 748, 311 N.W.2d 518 (1981). However, we have said that the actual knowledge exception to the written records requirement because of the loss of a limb has never been extended to back injuries. See *Baughman v. United-A.G. Co-op*, 7 Neb. App. 936, 586 N.W.2d 836 (1998). We hold to that position, and to the extent it was proved that Ashland-Greenwood possessed actual knowledge of Thorell's preexisting permanent partial disability, such is insufficient as a matter of law to shift any of the burden for permanent total disability payments under § 48-128.

The key statute in this case, § 48-128(1)(b), provides as follows:

> In order to qualify under this subsection, the employer must establish by written records that the employer had knowledge of the preexisting permanent partial disability at the time that the employee was hired or at the time the employee was retained in employment after the employer acquired such knowledge.

When reduced to its essence, the purpose of the written records requirement is to put in place a strictly limited method of proving a predicate fact before liability for benefits may be shifted to the Trust Fund. See *Baughman v. United-A.G. Co-op, supra.*

In *Baughman*, we defined the purpose of § 48-128 as providing employers an incentive to hire those who suffer from permanent disability, but we acknowledged that the statute restricts the benefits to those employers who do so "with knowledge that they are doing [so]." 7 Neb. App. at 949, 586 N.W.2d at 845. In *Baughman*, we said:

> [T]he hiring of the permanently disabled is to be a very purposeful thing before the employer gets the benefit of shifting liability. The purposefulness is insured, at least in theory, by the written records requirement. To impute knowledge where it did not actually exist would frustrate the policy that the benefit of the [Trust] Fund (the shifting

of liability for benefits for a subsequent injury) goes only to those employers who consciously hire those they know to be suffering from prior permanent disabilities.

7 Neb. App. at 949-50, 586 N.W.2d at 845.

With this framework in place, we turn to the trial judge's premise for his refusal to shift to the Trust Fund any of the liability for benefits attributable to Thorell's subsequent 1995 injury. The judge's premise was that although Ashland-Greenwood at one time had records memorializing its knowledge of Thorell's permanent disability, Ashland-Greenwood was unable to prove what we shall call "current possession" of such written records, and that therefore its proof was insufficient. In support of that conclusion, the trial judge cited our decision in *Baughman v. United-A.G. Co-op*, 7 Neb. App. 936, 586 N.W.2d 836 (1998). However, *Baughman*, when closely examined, does not address the issue of whether, when the claim is advanced against the Trust Fund, the employer's "current possession" of the written records is required before the employer can receive the benefits provided by § 48-128. Instead, *Baughman* focuses extensively on the employer's decision to hire the disabled or retain a disabled person in his or her employment. The claim in *Baughman* was that the crucial information from written records about the employee's preexisting disability was in the possession of the employer's insurer and that such information should be imputed to the employer so as to satisfy the written records requirement— there was no evidence or factual finding, as is true here, that sufficient written records were in the employer's possession at some point in time, just not at the time of the claim and trial against the Trust Fund. We rejected the imputation from insurer to employer proposition in *Baughman*, citing *Alaska Intern. v. Second Injury Fund*, 755 P.2d 1090 (Alaska 1988), where the Supreme Court of Alaska refused to impute the knowledge held by the workers' union, as evidenced by the union's written records to the employer, so as to satisfy the written records requirement of Alaska's second injury fund statute. In other words, our focus in *Baughman* was on the fact that it is the employer, rather than the insurer, who makes the hiring decision, remembering that § 48-128 requires that the employer do so with knowledge of the preexisting disability as proved by written records. Thus, the fact

that the insurer has the written records, which could be sufficient, does not satisfy the requirement of § 48-128, because it is the employer's knowledge which is crucial. *Baughman* does not address the issue of whether current possession of the necessary written records is required under § 48-128, and we have found no Nebraska case which directly does so.

The instant case presents a different issue than did *Baughman*. Here, Thorell sustained an injury in 1979 with resulting permanent partial disability of at least 25 percent, which is the level of preexisting disability required by § 48-128(1)(c) in order to trigger the benefit provided for in § 48-128 to the employer. The undisputed evidence is that as a result of the 1979 injury, a "[J]oint Application for Approval of Final Lump Sum Settlement" between Thorell, Ashland-Greenwood, and its insurer was entered into on the basis of payment for the remaining weeks of permanent partial disability attributable to a 25-percent disability, plus additional compensation. Under the law as it then existed, such a settlement had to be filed with and approved by the Workers' Compensation Court, and then filed in and approved by the district court. See Neb. Rev. Stat. § 48-139 (Reissue 1988). The evidence shows that such an application was filed in the Workers' Compensation Court on November 2, 1987, and the application is in our record as an exhibit to the Taylor deposition. Additionally, another exhibit, a records search request submitted to the clerk of the Nebraska Workers' Compensation Court, produced an order and decree from the district court for Douglas County approving the lump-sum settlement for Thorell from Ashland-Greenwood and its insurer "by reason of a permanent partial disability of 25% to the body as a whole," according to such decree. The district court order was file stamped as "received and filed" November 10, 1987, by the Nebraska Workers' Compensation Court. Those two exhibits standing alone establish that Ashland-Greenwood had knowledge of Thorell's preexisting 25-percent disability to the body as a whole—and the evidence is undisputed that Thorell thereafter remained an employee of Ashland-Greenwood. Such documents, and no one disputes their authenticity, were filed in the Nebraska Workers' Compensation Court and, according to Taylor's testimony, were retained in Ashland-Greenwood's records. The fact that nearly

20 years later, Ashland-Greenwood cannot find these documents in its possession is not the determinative fact that the trial judge and the review panel concluded it was.

This brings us to the matter of "judicial admissions." A judicial admission refers to a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving and dispensing with the production of evidence by conceding for purposes of litigation that the subject of the admission is true. *Nichols Media Consultants v. Ken Morehead Inv. Co.*, 1 Neb. App. 220, 491 N.W.2d 368 (1992), citing *Johns v. Carr*, 167 Neb. 545, 93 N.W.2d 831 (1958). Formal acts that may operate as judicial admissions include statements made in pleadings, and the rule of evidence is that matters contained in pleadings are judicial admissions insofar as the adversary is concerned. See *Nichols Media Consultants v. Ken Morehead Inv. Co., supra.*

The joint application and the district court order filed in the Nebraska Workers' Compensation Court in November 1987 as part of the judicial proceeding to complete the "[J]oint Application for Approval of Final Lump Sum Settlement" are admissions by Ashland-Greenwood, a party to such proceeding, as well as a judicial determination, which conclusively establish Ashland-Greenwood's knowledge of Thorell's permanent partial disability of 25 percent of the body as a whole by virtue of the January 1979 work injury.

Without doubt, the lump-sum settlement documents are "written records" which establish Ashland-Greenwood's knowledge of Thorell's preexisting disability. The Trust Fund brief does not argue otherwise; rather, the Trust Fund asserts that § 48-128 "requires an employer to produce at trial actual written records *in its possession* to prove the proposition that the employer had knowledge of the employee's permanent preexisting disability." (Emphasis supplied.) Brief for appellee at 27.

However, contrary to the Trust Fund's assertion quoted above, there is nothing in the language of § 48-128 that requires possession of the written records at the time of the subsequent injury or at the time the claim for contribution from the Trust Fund is made. We have found no Nebraska authority to support the Trust Fund's assertion. It seems that "current possession" of

the written records by the employer was assumed by the trial judge and the review panel to be part of the § 48-128 requirements. But, the reality is that the "written records" requirement is nothing more than a statutorily mandated method of proving a specific fact—that the employer had knowledge of the employee's preexisting disability at the time the employee was hired or was retained in employment. As emphasized by the Supreme Court of Arizona in discussing its written records requirement under Arizona's second injury fund statute, "the 'writing requirement is merely evidentiary, and must be sensibly construed so as not to defeat the statute's larger remedial purpose.'" (Emphasis omitted). See *Special Fund Div. v. Industrial Com'n*, 191 Ariz. 149, 153, 953 P.2d 541, 545 (1998), quoting *Special Fund Div. v. Industrial Com'n*, 189 Ariz. 162, 939 P.2d 795 (Ariz. App. 1997) (Fidel, J., dissenting). We hold that the written records requirement of § 48-128 is merely an evidentiary rule that must be sensibly construed.

Therefore, the crucial question here is not whether there is "current possession" of the written records (although such could be crucial in some factual patterns); rather, the question is whether the written records offered by the employer tend to prove the predicate fact: Did the employer have knowledge of the employee's preexisting disability when hiring the worker or when retaining him or her in employment? To answer our own question, we suggest that there could hardly be better written records to prove the predicate fact of the employer's knowledge of the preexisting disability than documents, drawn from the records of two courts which memorialize a statutory judicial proceeding, to which the employer was a party, for a settlement of a previous workers' compensation claim based on a 25-percent permanent disability of the body as a whole.

The "[J]oint Application for Approval of Final Lump Sum Settlement" is unique, because it is a pleading containing admissions of Ashland-Greenwood of the central predicate fact in the present case—that Thorell claimed to have sustained a 25-percent permanent partial disability of the body as a whole from the 1979 work accident. Further, the district court's order approving the settlement "by reason of [the claim of] permanent partial disability of 25% to the body as a whole" is even more powerful

proof of Ashland-Greenwood's knowledge of Thorell's preexisting disability. Ashland-Greenwood was a named party to that district court proceeding and is bound by the court's findings. At oral argument, counsel for the Trust Fund argued that the settlement documents do not establish Ashland-Greenwood's knowledge, because (and we paraphrase)· the settlement was prepared by the insurer and its lawyer, and was likely done so without the knowledge of Ashland-Greenwood. This argument ignores several key points. The application names Ashland-Greenwood as a party (as well as its insurer), and the lawyer clearly signed for both of such parties. Additionally, the law is clear that although lawyers retain apparent authority to make procedural and tactical decisions through the existence of the attorney-client relationship, a lawyer cannot settle a client's claim without express authority from the client. *Luethke v. Suhr*, 264 Neb. 505, 650 N.W.2d 220 (2002). This record does not contain even a hint that the settlement was not authorized by Ashland-Greenwood. In fact, the then business manager for Ashland-Greenwood, Taylor, testified that "[Thorell] did settle a lump sum settlement." And, in response to questioning by Ashland-Greenwood's counsel, she testified that the application would have been retained by Ashland-Greenwood and would have gone into the storage room in the basement.

The fact · that nearly 20 years later, Ashland-Greenwood cannot produce a copy of such documents from its records repository is really immaterial to the fact that must be proved. To hold that at the time the claim against the Trust Fund is tried, the written records must be in the "current possession" of the employer is to exalt form over substance, as well as impose a requirement not found in §· 48-128. Moreover, to so hold would also ignore the policy that the Nebraska Workers' Compensation Act is to be liberally construed for the benefit of claimants. See *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981). In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996). To graft onto § 48-128 a requirement that the written records need to be in the current

possession of the employer frustrates the purpose of § 48-128, which provides an incentive to employers to hire those who have preexisting disabilities, and, at the same time, to do so would be to ignore the function of the written records requirement, which is merely to establish a method of proof of a fact. In the final analysis, a requirement that the employer have "current possession" of the written records, particularly when the records are of a lump-sum settlement based on a claim of 25-percent permanent partial disability, imposes an artificial and arbitrary element of proof not found in § 48-128.

### RESOLUTION

Because the trial judge imposed upon Ashland-Greenwood a requirement of current possession of the written records and did not consider the import of the "[J]oint Application for Approval of Final Lump Sum Settlement" proceeding as evidenced by the written records thereof, remembering their status as official court records and admissions of Ashland-Greenwood, we hold that the trial judge erred as a matter of law in rejecting Ashland-Greenwood's claim for contribution from the Trust Fund. Thus, the review panel erred in affirming the decision of the trial judge. Accordingly, we reverse the decision of the review panel and direct that the review panel shall remand the matter to the trial judge with directions for him to determine the nature and extent of the Trust Fund's contribution to Thorell's permanent total disability payments.

REVERSED AND REMANDED WITH DIRECTIONS.